UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
THOMAS FARRUGIA,                       )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )            Civil Action No. 04-0294 (PLF)
                                       )
EXECUTIVE OFFICE FOR UNITED            )
STATES ATTORNEYS, et al.               )
                                       )
        Defendants.                    )
_____)

OPINION

        Plaintiff Thomas Farrugia, an inmate in the federal prison system who is

proceeding pro se, brought this action pursuant to the Freedom of Information Act, 5 U.S.C.

§§ 552, et seq., seeking information pertaining to certain trial exhibits from his federal criminal

trial.  This matter is currently before the Court on a motion for summary judgment filed on behalf

of three components of the United States Department of Justice.   Having considered defendants'

motion, plaintiff's opposition, defendants' reply and the entire record in this case, the Court will

grant the motion and enter judgment in defendants' favor.

I.  BACKGROUND

        By letters dated May 24, 2001 and June 7, 2001, plaintiff submitted requests for

information pursuant to the FOIA to the United States Attorney's Office in Fresno, California.

By letter dated June 11, 2001, plaintiff directed a similar FOIA request to the Criminal Division

of the United States Department of Justice in Washington, D.C.  In substance, plaintiff has

sought all information relating to three "missing" trial exhibits from his federal criminal trial.[1]  It

appears from the record that two of the trial exhibits referenced in plaintiff's FOIA requests are

illicit drugs that were seized by law enforcement officers during the investigation that led to

plaintiff's conviction, see Defendants' Motion to Dismiss, Declaration of Carrie D. Quirk

("Quirk Decl.") ¶¶ 5, 6, 13, 32, and that the exhibits themselves were not retained by the United

States Attorney's Office after the conclusion of the criminal proceedings against plaintiff in the

early 1990s, see id. ¶ 6.  It further appears that the third exhibit is actually a defense exhibit,

rather than a government exhibit, and that said exhibit is "the analysis of the suspected

methamphetamine seized," rather than the seized drugs themselves.  Id. ¶ 33; see also id. ¶ 13,

26.[2]  Plaintiff asserts that the information he has requested "goes directly to proving his actual

innocence and is exculpatory."  Plaintiff's Supplement to His Opposition to Defendants' Motion

for Summary Judgment ("Plaintiff's Supp.") at 3.

---

[1]	Specifically, plaintiff seeks "the chain of evidence, who had possession of, access to, signed-out and extracted samples from, all testing done, test results and lab notes, all memos and information written on, and the final disposition of" the exhibits.  Defendants' Motion to Dismiss, Declaration of John W. Kornmeier ("Kornmeier Decl."), Exhibits A and B.

[2]	While laboratory reports and clinical analyses of suspected narcotics certainly could be agency "records" under the FOIA, see U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 145 (1989) (agency records include "books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics"), the narcotics themselves likely could not be agency "records" under the FOIA, see Nichols v. United States, 325 F. Supp. 130, 135-36 (D. Kan. 1971), aff'd, 460 F.2d 671 (10th Cir. 1972) (rifle, articles of clothing, various bullets and fragments thereof may not be classified as a "records" under FOIA).

### A. Request to the Criminal Division

Upon receiving plaintiff's FOIA request, the Criminal Division conducted a search of its centralized records index. Defendants' Motion to Dismiss, Declaration of Joseph H. Beck ("Beck Decl.") ¶ 12. By letter dated November 22, 2002, the Criminal Division advised plaintiff that its search had located no responsive documents. Id. ¶ 6. By letter dated December 2, 2002, plaintiff filed an appeal with the Office of Information and Privacy ("OIP"). Id. ¶ 7. On February 20, 2003, the OIP advised plaintiff that it was affirming the Criminal Division's actions. Id. ¶ 8.

### B. Requests to the United States Attorney's Office in Fresno, California

After the United States Attorney's Office in Fresno, California received plaintiff's FOIA requests, a systematic search for plaintiff's criminal case files was conducted, see Quirk Decl. ¶¶ 4, 5, followed by several reviews of the case files, see id. ¶¶ 9-12. All responsive materials that were located were then forwarded to the Executive Office for United States Attorneys ("EOUSA"). Id. ¶ 32.[3] The EOUSA, in turn, made two responses to plaintiff.[4] The first, by letter dated September 4, 2002, released nine pages in full and 23 pages in part. Kornmeier Decl. ¶ 6. The EOUSA supplemented its response, by letter dated May 10, 2004,

---

[3]    Initially, the United States Attorney's Office in Fresno construed plaintiff's requests as seeking the trial exhibits themselves and informed the EOUSA that no responsive records were located. See Quirk Decl. ¶ 6. The EOUSA subsequently – and correctly – clarified the substance of plaintiff's FOIA requests and instructed the United States Attorney's Office to search for "any records or information" pertaining to the trial exhibits, rather than the exhibits themselves. Id. ¶ 8.

[4]    The EOUSA, among other things, is responsible for responding to FOIA requests directed to the various United States Attorney's Offices. See Kornmeier Decl. ¶ 1.

which provided that the EOUSA would release to plaintiff an additional 56 pages in full and

three pages in part if plaintiff paid a $25 search fee.  Id.  Plaintiff subsequently paid the fee, and

the records referenced in the May 10, 2004, letter either already have been or are in the process of

being released to plaintiff.  See Reply Memorandum in Support of Defendants' Motion for

Summary Judgment at 3.  All of the information that the EOUSA has withheld has been withheld

pursuant to FOIA Exemption 7(C).  See Kornmeier Decl., Exhibit F (Vaughn index).

           The EOUSA also referred a total of 88 pages of materials to the Drug

Enforcement Administration for the DEA's direct response to plaintiff.  Defendants' Motion to

Dismiss, Declaration of Leila I. Wassom ("Wassom Decl.") ¶¶ 7, 12.  The DEA subsequently

determined that one of the documents referred by the EOUSA was incomplete and located in its

files four pages that were missing from the document.  Id. ¶ 23.  Accordingly, the DEA reviewed

a total of 92 pages of responsive material as a result of the EOUSA referrals.  Id. ¶ 24.[5]

           The DEA made a series of releases and re-releases to plaintiff.  In total, the DEA

released eight pages in their entirety and portions of another 63 pages of materials.  The DEA

also withheld 21 pages in their entirety.   In withholding certain information, the DEA has

invoked FOIA Exemptions 2, 7(C), 7(D) and 7(F).  See Wassom Decl., Exhibit I (Vaughn index).

           To summarize, all records responsive to plaintiff's requests that defendants

located either have been released to plaintiff (or are in the process of being released) or have been

withheld in whole or in part pursuant to specific FOIA statutory exemptions.  The issues before

---

[5]        Of the records that the EOUSA referred to the DEA, the DEA, in turn, referred ten pages to the Environmental Protection Agency.  Wassom Decl. ¶ 8.  The EPA then referred the ten pages back to the DEA, advising that the EPA had no objection to the release of the documents.  Id. ¶ 10.

the Court are whether the declarations submitted by defendants are sufficiently detailed to enable the Court to determine (1) whether defendants have conducted searches reasonably calculated to uncover all relevant records, and (2) whether the defendants have applied the asserted FOIA exemptions properly to withhold certain records or portions of certain records.

## II.  DISCUSSION

### A.  Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  "[A]ny factual assertions in the movant's affidavits will be accepted . . . as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion."  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (quoting Lewis v. Faulkner, 689 F.2d 100, 102 (7th Cir. 1982)).

FOIA cases typically and appropriately are decided on motions for summary judgment.  Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993); Rushford v. Civiletti, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980).  In a FOIA case, the Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974); Hertzberg v. Veneman, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).  The Court also has discretion to review some or all of the withheld documents in camera to determine the applicability of the claimed exemptions.  See 5 U.S.C. § 552(a)(4)(B); NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978); Quinon v. FBI, 86 F.3d 1222, 1227-28 (D.C. Cir. 1996). Regardless of whether the Court relies on affidavits or declarations, an in camera review of the documents, or a combination of both, an agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements."  Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978); see also Hertzberg v. Veneman, 273 F. Supp. 2d at 74.

*B.  Adequacy of Search*

In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness.  See Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998); Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  To prevail on a motion for summary judgment, an agency must show that it "has conducted a search reasonably calculated to uncover all relevant documents."  Steinberg v. U.S. Dep't of Justice, 23 F.3d 548, 552 (D.C. Cir. 1994) (internal quotations and citation omitted); see also Oglesby v. U.S. Dep't of the Army, 920 F.2d at 68 (agency  required only to make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested").  Importantly, in responding to a request for records, "an agency is not required by FOIA to create a document that does not exist in order to satisfy the request."  Yeager v. DEA, 678 F.2d 315, 321 (D.C. Cir. 1982) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161-62 (1975)).

In his opposition to defendants' motion for summary judgment, plaintiff contends that the defendants failed to produce all documents of interest to him.  For example, plaintiff maintains that he has not been provided with "accurate documentation as to the final disposition" of certain trial exhibits from his federal criminal trial, "any laboratory reports as to what testing was done" on the exhibits, "accurate information as to the[ ] chemical make-up" of the exhibits, or "documentation of" the exhibits "ever [having been] weighed or analyzed."  Plaintiff's

Response to Defendants' Motion for Summary Judgment at 1.[6]  The Court construes these statements as a challenge to the adequacy of defendants' record searches.

Defendants have filed a declaration from Carrie D. Quirk, who is the FOIA contact person for the Fresno Division of the United States Attorney's Office for the Eastern District of California, detailing the nature of that Office's records search.  First, according to Ms. Quirk's declaration, a search was conducted on the Office's computer databases, its archive lists, and index cards for the purpose of locating all records relating to plaintiff's criminal trial.  See Quirk Decl. ¶¶ 4, 5.  That search uncovered six boxes containing the relevant criminal case files. Id. ¶ 11.  The six boxes of records were then reviewed on multiple occasions in order to locate all records responsive to plaintiff's FOIA requests.  Id. ¶¶ 9-12.  Ms. Quirk's declaration also describes in detail the records that were located through these efforts.  Id. ¶¶ 12-31.  For example, Ms. Quirk located investigative reports relating to the search and seizure of the drug evidence in question, id. ¶ 14-17, 22, lab reports and analyses of the evidence, id. 18, 21, information

_____

[6]    As noted above, plaintiff asserts that the information he has requested "goes directly to proving his actual innocence and is exculpatory."  Plaintiff's Supp. at 3. The courts, however, "have consistently refused to recognize any public interest in disclosure of information to assist a convict in challenging his conviction."  Taylor v. U.S. Dep't of Justice, 268 F. Supp. 2d 34, 36 (D.D.C. 2003).  Because the identity of the requester and the purpose for the request are irrelevant to FOIA decisions, see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 770-71 (1989), requests for exculpatory material are "outside the proper role of FOIA," and requests for such material should be resolved on their own merits under the provisions of the FOIA and its exemptions, Smith v. Bureau of Alcohol, Tobacco & Firearms, 977 F. Supp. 496, 499-500 (D.D.C. 1997); see also Canning v. U.S. Dep't of Justice, 919 F. Supp. 451, 457 (D.D.C. 1994) (collecting D.C. Circuit cases).  A decision to withhold records because they are exempt under specific FOIA statutory exemptions therefore is not "trumped" by the desire for exculpatory material.  Cucci v. DEA, 871 F. Supp. 508, 514 (D.D.C. 1994). Whether the government has failed to meet its responsibilities under Brady v. Maryland, 373 U.S. 83 (1963), of course, is an important question in trial, appellate and post-conviction proceedings, but it must be addressed in another forum.

regarding custody of the evidence, <u>id</u>. ¶ 14, 16, 17, 20, 21, and correspondence between plaintiff or his trial counsel and the United States Attorney's Office regarding the evidence, <u>id</u>. ¶ 23, 29, 31.

Defendants further have submitted the declaration of Joseph S. Beck, which thoroughly describes the scope and nature of the search conducted by the Criminal Division. <u>See</u> Beck Decl. ¶¶ 9-13. The Beck declaration explains why the Criminal Division's search failed to locate any responsive documents – namely, because the Criminal Division maintains records only pertaining to cases that it prosecutes. <u>Id</u>. ¶ 14. Plaintiff was prosecuted by the United States Attorney's Office for the Eastern District of California, not by the Criminal Division. <u>Id</u>. ¶¶ 14, 15.

It is apparent from the record that defendants have made a "good faith effort to conduct a search for the requested records, using methods which reasonably can be expected to produce the information requested." <u>Moore v. Aspin</u>, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing <u>Oglesby v. U.S. Dep't of the Army</u>, 920 F.2d at 68). As such, the Court concludes that defendants' searches for records requested by plaintiff were adequate to fulfill defendants' obligations under the FOIA.

### C. Exemption 2

Exemption 2 of the FOIA protects from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). To fall within Exemption 2, the material withheld must be "predominantly internal" and its disclosure "significantly risks circumvention of agency regulations or statutes." <u>Crooker v. Bureau of</u>

Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).  Under the test adopted

by the D.C. Circuit in Crooker, "[i]t is not up to [the] court to balance the public interest in

disclosure against any reason for avoiding disclosure.  Congress has done the necessary

balancing" when it comes to law enforcement materials that are "predominantly internal" and

whose disclosure would "significantly risk[ ] circumvention of agency regulations or statutes."

Id. at 1074 (footnote omitted).

       The DEA has invoked Exemption 2 to withhold all "violator identifiers," which

are internal codes used by the DEA to facilitate administrative and record-keeping procedures.

See Wassom Decl. ¶¶ 9, 11, 13, 26, 29-32, 55, 60; id., Exhibit I.  Specifically, the DEA has

withheld (1) Geographical Drug Enforcement Program ("G-DEP") codes, which are assigned to

all DEA cases and indicate the classification of the violator, the types and amount of suspected

drugs involved, the priority of the investigation, and the suspected location and scope of criminal

activity; and (2) Narcotic and Dangerous Drug Information System ("NADDIS") numbers, which

are assigned to drug violators, suspected drug violators and entities that are of investigative

interest.  Wassom Decl. ¶ 29.  According to the DEA, release of these internal codes would help

identify certain aspects of particular narcotic investigations and therefore would impede the

DEA's "investigative and law enforcement efforts."  Id. ¶ 31.

       Courts routinely have interpreted Exemption 2 to allow the withholding of law

enforcement identification codes.  See Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 485-86

(symbols used to refer to informants in FBI files records exempt); Putnam v. U.S. Dep't of

Justice, 873 F. Supp. 705, 710 (D.D.C. 1995) (same).  More to the point, courts consistently have

held that G-DEP codes and NADDIS numbers are properly withheld pursuant to Exemption 2.

-10-

See Watson v. U.S. Dep't of Justice, 799 F. Supp. 193, 195 (D.D.C. 1992); Manna v. U.S. Dep't of Justice, 832 F. Supp. 866, 880 (D.N.J. 1993).  Accordingly, the Court concludes that the DEA properly has invoked Exemption 2 to withhold all G-DEP codes and NADDIS numbers.

### D.  Exemption 7(C)

Exemption 7(C) of the FOIA protects from mandatory disclosure records compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 522(b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of the individual mentioned in the record against the public's interest in disclosure.  See Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993); Stern v. FBI, 737 F.2d 84, 91 (D.C. Cir. 1984).  It is the "interest of the general public, and not that of the private litigant" that the Court considers in this analysis.  Brown v. FBI, 658 F.2d 71, 75 (2d Cir. 1981) (citing Ditlow v. Shultz, 517 F.2d 166, 171-72 (D.C. Cir. 1975).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses 'on the citizens' right to be informed about what their government is up to.'"  Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989)).

The privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial."  SafeCard Servs., Inc., 926 F.2d at 1205.  Details that "reveal little or nothing about an agency's own conduct" are not part of the public interest for the purposes of

Exemption 7(C).  Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 45 (D.D.C. 1999) (quoting

Davis v. U.S. Dep't of Justice, 968 F.2d at 1282).  Even when government misconduct is alleged

as the justification for disclosure, "the public interest is insubstantial unless the requester puts

forward compelling evidence that the agency denying the FOIA request is engaged in illegal

activity and that the information sought is necessary in order to confirm or refute that evidence."

Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d at 45 (citations omitted).

       The DEA has invoked Exemption 7(C) to withhold the names of and other

identifying information concerning DEA special agents, other federal, state and local law

enforcement officers, law enforcement agency employees and support staff, and other third

parties, including individuals who either were associated with the plaintiff or who were

associated with the investigation of plaintiff's illegal activities.  See Wassom Decl. ¶ 35; id.,

Exhibit I.  The EOUSA has invoked Exemption 7(C) to withhold the names of law enforcement

personnel, a California Department of Justice official, a person who worked in a laboratory either

as a law enforcement official or as a private analyst, third parties, attorneys for third parties and

one telephone number.  See Kornmeier Decl., Exhibit F.

       The deletion of names and identifying information of federal, state and local law

enforcement personnel under similar circumstances routinely has been upheld.  See Lesar v. U.S.

Dep't of Justice, 636 F.2d at 487 (finding legitimate interest in preserving identities of

government officials where disclosure could subject them to annoyance or harassment in either

their official or private lives); Pray v. Dep't of Justice, 902 F. Supp. 1, 3 (D.D.C. 1995)

(possibility of animosity toward FBI outweighed any possible benefit of disclosure), aff'd in

relevant part, 1996 WL 734142 (D.C. Cir. Nov. 20, 1996).  Moreover, the names and identities of

individuals of investigatory interest to law enforcement agencies and those merely mentioned in law enforcement files consistently have been protected from disclosure for the reasons defendants assert here.  See Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995) (citing U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. at 779; Baez v. U.S. Dep't of Justice, 647 F.2d 1328, 1338 (D.C. Cir. 1980); and Branch v. FBI, 658 F. Supp. 204, 209 (D.D.C. 1987)).  In the absence of any compelling evidence that the government agency has engaged in illegal activity, this type of information is exempt from disclosure.  See Spirko v. U.S. Postal Serv., 147 F.3d 992, 999 (D.C. Cir. 1998); Voinche v. FBI, 46 F. Supp. 2d 26, 32 (D.D.C. 1999).

With respect to third parties, "'Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.'"  Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting Dunkelberger v. Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)) (other citation and internal quotation marks omitted); see also Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996) ("records contain[ing] the names of informants, witnesses, and potential suspects who are relevant to [a] criminal investigation . . . clearly fall within the scope of Exemption 7(C)").  Sources who provide information to law enforcement face reputational harm if their identities are disclosed.  Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d at 46.  Disclosure of the identities of sources would not shed light on defendants' performance of their statutory duties to enforce the law.  See id.  The privacy interest of a source or informant outweighs the asserted public interest in disclosure.  Id.

Based on these principles, the Court concludes that defendants properly have

invoked Exemption 7(C) to protect the identities of law enforcement officials and third parties.

### E.  Exemption 7(D)

Exemption 7(D) of the FOIA protects from disclosure those records or

information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a
> confidential source, including a State, local, or foreign agency or
> authority or any private institution which furnished information on
> a confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of
> a criminal investigation . . . information furnished by a confidential
> source.

5 U.S.C. § 552(b)(7)(D).  To invoke Exemption 7(D), an agency must show either that a source

provided the information to the agency under express assurances of confidentiality or that the

circumstances support an inference of confidentiality.  See U.S. Dep't of Justice v. Landano, 508

U.S. 165, 179-81 (1993).  When determining the latter, the proper inquiry is "whether the

particular source spoke with an understanding that the communication would remain

confidential."  Id. at 172.  The government is not entitled to a presumption that all sources

supplying information in the course of a criminal investigation are confidential sources.  An

implied grant of confidentiality may be inferred, however, from the circumstances surrounding

the imparting of the information, including the nature of the criminal investigation and the

informant's relationship to the target.  See id.; Computer Prof'ls for Soc. Responsibility v. U.S.

Secret Serv., 72 F.3d at 905-06.

-14-

Unlike with other FOIA exemptions, the Court should "not . . . balance interests under Exemption 7(D)." Parker v. Dep't of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991); see also Jones v. FBI, 41 F.3d 238, 247 (6th Cir. 1994) (Exemption 7(D) "does not involve a balancing of public and private interests"). Thus, "once the agency receives information from a confidential source during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection." Parker v. Dep't of Justice, 934 F.2d at 380 (internal quotation marks and citations omitted).

The DEA has withheld the names of several sources, as well as information the sources provided to law enforcement officials. Wassom Decl. ¶¶ 40-46; id., Exhibit I. Based on the nature of the crime for which plaintiff was convicted and the circumstances surrounding his arrest, see Wassom Decl. ¶ 41, it is reasonable to infer the existence of an implicit grant of confidentiality. Therefore, the Court concludes that the defendants properly have invoked Exemption 7(D) to withhold the names of confidential sources and information furnished by confidential sources.

## F. Exemption 7(F)

Exemption 7(F) of the FOIA protects from disclosure those records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). The DEA has invoked Exemption 7(F) to withhold the names of DEA agents and other law enforcement personnel. In doing so, the DEA asserts that the nature of the crime for which plaintiff has been convicted makes it reasonable to conclude that the release of the names of its

-15-

agents and other law enforcement personnel could endanger their lives or physical safety. Because the Court has concluded that this information is exempt from disclosure under Exemption 7(C), the Court does not reach the issue of whether the information also properly was withheld under Exemption 7(F).

### G.  Segregability

Under the FOIA, if a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the agency can demonstrate that the non-exempt portions are inextricably intertwined with exempt portions.  See Assassination Archives and Research Center v. CIA, 334 F.3d 55, 57-58 (D.C. Cir. 2003); Trans-Pacific Policing Agreement v. U.S. Customs Serv., 177 F.3d 1022, 1026-27 (D.C. Cir. 1999); 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record" must be provided "after deletion of the portions which are exempt.").  As a result, before withholding a document in its entirety, the agency must demonstrate that it cannot segregate the exempt material from the non-exempt and disclose as much as possible.  See Summers v. Dep't of Justice, 140 F.3d 1077, 1081 (D.C. Cir. 1998); Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  Powell v. U. S. Bureau of Prisons, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting Church of Scientology v. U.S. Dep't of the Army, 611 F.2d 738, 744 (9th Cir. 1979)).

Having reviewed the declarations, see, e.g., Wassom Decl. ¶¶ 51-62, and the Vaughn indices that have been submitted by defendants, the Court finds that the defendants have

made adequate efforts to disclose segregable materials and have explained with sufficient

specificity why information in certain records is not segregable.  These efforts demonstrate that

defendants "undertook an analysis to determine what, if any, non-confdential information could

be released."  Edmonds v. FBI, 272 F. Supp. 2d 35, 57 (D.D.C. 2003).  Accordingly, the Court

concludes that defendants have "carefully and methodically sought to respect the principle 'that

non-exempt portions of a document must be disclosed unless they are inextricably intertwined

with exempt portions.'"  Canning v. Dep't of Justice, 848 F. Supp. 1037, 1049 n.2 (D.D.C. 1994)

(quoting Schiller v. NLRB, 964 F.2d 1205, 1209 (D.C. Cir. 1992)).


III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that defendants' motion for summary judgment is GRANTED.

Judgment will be entered in favor of the defendants.  An appropriate Order will accompany this

Opinion.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Court

DATE:  February 14, 2006